IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TONI M. P.,[1] | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No.  23-CV-013-MTS |
| | ) |
| MARTIN O'MALLEY,[2] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Toni M. P. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is

---

[1] The Court notes that Plaintiff's Opening Brief and Defendant's Response appear to use Plaintiff's middle and last names only. (Docket Nos. 8, 13). However, this Opinion and Order uses Plaintiff's first name and the initials of her middle and last names so as to conform with the appearance of Plaintiff's name on the CM/ECF docket sheet and in her medical records.

[2] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

disabled under the SSA "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant— taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*.

at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence.  *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On August 6, 2020, Plaintiff filed an application for both Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the SSA and Title XVI supplemental security income, 42 U.S.C. § 1381, *et seq.*  (R. 15, 268–69).  She alleged an inability to work beginning on June 30, 2020, due to limitations resulting from cancer, depression, low immune system (hypothyroidism), anxiety, extreme fatigue, abdominal pain, alopecia areata, celiac disease, and irritable bowel syndrome ("IBS").  (R. 268, 298).  Plaintiff was fifty-eight years old at the time of the ALJ's

decision. (R. 29, 268). She has at least a high school education and past relevant work as a construction laborer, forklift operator, security guard, and security guard supervisor. (R. 300).

Plaintiff's application was denied both initially and upon reconsideration. (R. 151–58, 166–81). At Plaintiff's request, ALJ Doug Gabbard, II, conducted an administrative hearing on May 19, 2022. (R. 36–66). The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 216–17). ALJ Gabbard issued a decision on June 10, 2022, denying benefits and finding Plaintiff not disabled. (R. 12–35). Plaintiff sought review by the Appeals Council, which was denied on November 15, 2022. (R. 1–6). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 30, 2020. (R. 18). At step two, he found Plaintiff suffered from the severe impairments of anxiety and depression. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. *Id.* Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform a full range of work at all exertional levels" with the following additional non-exertional limitations:

> The full range of semi-skilled work, which requires understanding, remembering and carrying out some detailed skills, but does not require more complex work duties; she may have frequent interpersonal contact with supervisors and coworkers; she can attend and concentrate for extended periods, but should have regular work breaks every 2 hours, as normally allowed in competitive work; she cannot perform work requiring a specific production rate such as assembly line work or work requiring hourly quotas; she should have only occasional, well-explained workplace changes; and she should have only occasional contact with the general public.

(R. 20).

At step four, the ALJ determined Plaintiff was able to perform her past relevant work as a security guard. (R. 28). As a result, the ALJ found Plaintiff had not been under a disability from June 30, 2020, through the date of the decision. (R. 29).

## Errors Alleged for Review

Plaintiff asserts several errors for review in her challenge to the Commissioner's denial of benefits. (Docket No. 8 at 3). First, Plaintiff appears to assert that the ALJ erred at step two by failing to properly consider all of Plaintiff's impairments, severe and non-severe, and thus failed to include appropriate limitations in the RFC. *Id.* at 4. Second, Plaintiff argues the ALJ failed to comply with SSR 96-8p, which requires the ALJ provide a narrative discussion explaining the RFC determination. *Id.* at 11. Third, Plaintiff maintains the ALJ erred by concluding she was capable of performing her past relevant work as a security guard with the assessed RFC. *Id.* at 12.

## The ALJ's Step Two Determination

At step two, Plaintiff bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).[3] An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It also "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.905. The severity determination for an alleged

---

[3] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522, 416.922. Examples of basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985).

impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams*, 844 F.2d at 750. Consequently, a claimant's testimony alone is insufficient to establish a severe impairment. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]").

The burden of showing a severe impairment is *de minimis*, yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070–71 (10th Cir. 2007) (quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)). An ALJ "must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004) (quotation omitted). If the claimant is unable to make a *de minimus* showing of medical severity, then the disability determination process ends, and she is determined not disabled. *Williams*, 844 F.2d at 751.

When considering the evidence at step two, "[t]he record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "In addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing

*Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)).

At step two, the ALJ found Plaintiff to have severe impairments of depression and anxiety. (R. 18). He then identified Plaintiff's medically determinable non-severe impairments of status post ovarian cancer; hypothyroidism; abdominal hernia, status post surgeries; alopecia; celiac disease/IBS; insomnia; occasional fatigue; lymphedema; nicotine dependence; fractured rib; gastrointestinal reflux disease; colon polyp; hyperkinetic disorder; neuropathy; food intolerance; chronic diarrhea; anemia; status post carpal tunnel release; cholecystectomy; hysterectomy; appendectomy; right knee acute lateral meniscus tear; status post right leg fracture; and dental problems. *Id.* Ultimately, the ALJ determined Plaintiff's non-severe impairments, considered singly and in combination, "did not significantly limit the ability to perform basic work activities and were therefore nonsevere." *Id.* The ALJ reasoned, in part, that these impairments were non-severe because records indicated Plaintiff "responded well to treatment, with improved symptomatology, and therefore failed to meet the durational requirement of causing more than minimal limitation for at least 12 months." *Id.* As to Plaintiff's chronic impairments, the ALJ noted Plaintiff received conservative, routine care and the record "did not indicate more than minimal limitation[.]" *Id.* The ALJ then included a general string cite to nine evidentiary exhibits. (R. 18) (*See* R. 396–529, 538–91, 597–621).

Plaintiff asserts the ALJ's step two analysis "is conclusory and fails to include citations to specific medical facts and other evidence . . . ." (Docket No. 8 at 6). As previously noted, there is no requirement that an ALJ discuss every piece of evidence "[a]nd when an 'ALJ indicates he has considered all the evidence[,] our practice is to take the ALJ at his word.'" *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)). Regardless, any error committed by the ALJ at this step is harmless, as he proceeded

7

through steps three and four, suggesting that Plaintiff's benefits could not properly be denied at step two. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Thus, the Court finds Plaintiff's step two argument to be unavailing.

### The ALJ's Narrative Discussion

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. She must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Importantly, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Plaintiff argues the ALJ "failed to comply with the narrative requirements of *SSR* 96-8p

and failed to explain how all [Plaintiff's] assigned impairments are accounted for in the RFC." (Docket No. 8 at 11). More specifically, Plaintiff takes issue with the ALJ's lack of any corresponding functional limitations in the RFC as to several of her non-severe impairments, including her abdominal hernia, knee pain, neuropathy, and occasional fatigue. *Id.* at 7–11.

The ALJ began the RFC discussion by stating that he considered all of Plaintiff's symptoms, the objective medical evidence, including medical opinions and prior administrative medical findings, in addition to other evidence. (R. 20). He then summarized Plaintiff's statements from the administrative hearing, discussing her reports of abdominal pain, as well as knee pain. (R. 21–22). The ALJ also noted that, despite being instructed to return if the knee pain worsened, Plaintiff never sought further treatment. (R. 22).

Continuing through the evidence of record, the ALJ discussed Plaintiff's medical records from 2018 documenting her abdominal pain and tenderness, as well as CT imaging of her abdomen which revealed no recurrent or metastatic malignancy. (R. 22–24) (referencing R. 473–78, 484, 503). The ALJ's discussion noted that Plaintiff was evaluated for a hernia in October 2019 and received laparoscopic robotic-assisted recurrent incarcerated ventral incisional hernia repair with IPOM reinforcement in November 2019. (R. 23) (citing R. 457–60). According to later examinations in December 2019 and January 2020, Plaintiff was doing well and reported that the surgery helped with her abdominal pain. (R. 24) (citing R. 461, 468). The ALJ noted that, although there were further reports of abdominal pain and tenderness, Plaintiff's physical exams were generally within normal limits. (R. 24–26) (citing R. 463–67, 544–60).

As to Plaintiff's knee pain, the ALJ discussed Plaintiff's medical records from May 2019 showing she experienced pain after falling and received a "diagnosis for acute lateral meniscus tear of the right knee." (R. 23) (referencing R. 419–20). Despite the diagnosis, the report also

stated Plaintiff wished to "treat the injury conservatively with more rest with ice and an [A]ce wrap[,]" as opposed to surgery. *Id.* (R. 420).

The ALJ also considered Plaintiff's complaints of neuropathy, including her reluctance to take prescribed pain medication due to addictive concerns. (R. 21). He continued, discussing medical reports documenting Plaintiff's neuropathy as either stable or improving. (R. 22, 24) (referencing R. 463, 468, 498, 516). However, as recognized by the ALJ, records from 2021 indicated worsening neuropathy. (R. 26) (*See* R. 367, 554, 556). Although Plaintiff reported increased neuropathy, the ALJ noted the same records indicated Plaintiff's musculoskeletal and neurological systems were within normal limits. *Id.*

The ALJ also discussed Plaintiff's reports of fatigue and hypothyroidism, as well as insomnia/difficulties sleeping. (R. 21–22). He specifically referred to records documenting Plaintiff's fatigue, night sweats, insomnia, and hypothyroidism. (R. 22–26) (*See* R. 427–28, 463–67, 475, 517, 544–60, 575–77, 597–99). However, the ALJ found the same records indicated Plaintiff's physical exams were within normal limits. (R. 22, 24, 26). Additionally, records show Plaintiff was prescribed Valium for insomnia, which she reported worked well for her. (R. 24) (citing R. 416, 597).

Ultimately, the ALJ determined Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . [we]re not entirely consistent with the longitudinal record of evidence which generally denoted mild to benign physical exams and improvement with conservative treatment." (R. 26). Moreover, the ALJ noted that Plaintiff continued to work "for a long time" despite her physical complaints and, despite choosing not to take pain medication, "is generally able to engage in most of her daily activities of living[.]" *Id.*

Plaintiff's claim that the ALJ "minimized or ignored" evidence of Plaintiff's abdominal

pain and occasional fatigue is inaccurate. (Docket No. 8 at 8, 10). The ALJ thoroughly discussed evidence of Plaintiff's non-severe impairments, including abdominal and knee pain, neuropathy, and occasional fatigue. While an ALJ "must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*," *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original), "an ALJ is not required to discuss every piece of evidence" to satisfy this requirement. *Clifton*, 79 F.3d at 1009–10. The Court is likewise unpersuaded by Plaintiff's argument that the ALJ improperly evaluated or accounted for Plaintiff's knee pain and neuropathy. (Docket No. 8 at 8–9). The ALJ is permitted to consider several factors when evaluating an individual's symptoms, including the claimant's ability to perform daily activities, the effectiveness of medication, treatment aside from medication, and the duration and frequency of pain. SSR 16-3p, 2017 WL 5180304, at *7–*8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Although Plaintiff disagrees with his evaluation, the ALJ is responsible for determining Plaintiff's RFC and the Court will not reweigh the evidence absent an indication it was improperly considered. *Howard*, 379 F.3d at 949; *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

Furthermore, the Court finds the ALJ included a narrative discussion describing how the evidence, medical and nonmedical, supported each of his conclusions in compliance with SSR 96-8p. *See* 1996 WL 374184, at *2. Thus, the ALJ's RFC discussion provided sufficient reasoning and support as to why Plaintiff's non-severe impairments did not result in more extensive functional limitations.[4] Therefore, in extension, the ALJ's hypothetical questioning of the VE

---

[4] Plaintiff appears to argue, within her overarching narrative argument, that the ALJ's evaluation of the state agency medical consultants' opinions indicates the ALJ "erroneously believed he could ignore the effects of [Plaintiff's] nonsevere physical impairments[.]" (Docket No. 8 at 5–6) (citing R. 27). The ALJ found both medical consultants' opinions that Plaintiff had no severe physical impairments to be persuasive. (R. 27). Plaintiff offers no further explanation as to how the ALJ's

was sound, as he included those limitations he adopted in the RFC. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for the denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)).

### The ALJ's Assessment of Plaintiff's Past Relevant Work

Pursuant to SSR 00-4p, "[w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT [Dictionary of Occupational Titles], the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." 2000 WL 1898704, at *4 (Dec. 4, 2000). Thus, the ALJ is required to "investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). However, "the Commissioner's duty 'to identify and resolve apparent conflicts between the [DOT] and vocational expert testimony is not fulfilled simply by taking the vocational expert at his word that his testimony comports with the [DOT] when the record reveals an apparent conflict.'" *Sigala v. Berryhill*, CV 17-1126 JHR, 2019 WL 719512, at *3 (D.N.M. Feb. 20, 2019) (quoting *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 92 (2d Cir. 2019)).

---

finding that the medical consultants' opinions were persuasive signifies the ALJ disregarded Plaintiff's non-severe impairments. The Court is unconvinced by Plaintiff's assertion given that the ALJ provided a narrative discussion supported by substantial evidence wherein the ALJ addressed Plaintiff's non-severe impairments in detail. (R. 21–26).

Plaintiff argues the ALJ erroneously concluded she could perform her past relevant work ("PRW") as a security guard as it was generally, but not actually, performed. (Docket No. 8 at 12–15). More specifically, Plaintiff asserts the ALJ failed to resolve an inconsistency between the RFC and Plaintiff's PRW as to the required level of contact with people. *Id.* at 12–13. Additionally, Plaintiff contends there is an unresolved inconsistency between the RFC and the temperament necessary to perform her PRW and that the ALJ failed to perform a proper *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) analysis. *Id.* at 13–15.

### A. Interaction with People

"The DOT rates the amount of interaction with people on a scale of 0-8, with 8 representing the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016); *see* DOT, App. B, 1991 WL 688701. For security guard, the DOT rates the amount of interaction with people as a six, classifying it as "significant." DOT No. 372.667-034, 1991 WL 673100. A rating of six indicates the job requires "Speaking-Signaling: Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants." *Id.* Furthermore, the DOT describes the duties of a security guard as such:

> Guards industrial or commercial property against fire, theft, vandalism, and illegal entry, performing any combination of [the] following duties: Patrols, periodically, buildings and grounds of industrial plant or commercial establishment, docks, logging camp area, or work site. Examines doors, windows, and gates to determine that they are secure. Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden articles, and apprehends or expels miscreants. Inspects equipment and machinery to ascertain if tampering has occurred. Watches for and reports irregularities, such as fire hazards, leaking water pipes, and security doors left unlocked. Observes departing personnel to guard against theft of company property. Sounds alarm or calls police or fire department by telephone in case of fire or presence of unauthorized persons. Permits authorized persons to enter property.

*Id.*

Relevant here, Plaintiff's RFC limits her to "frequent interpersonal contact with supervisors and coworkers" and "only occasional contact with the general public."[5] (R. 20). The ALJ, relying on the VE's testimony, then concluded Plaintiff was not disabled because she could perform her PRW as a security guard as it was generally performed. (R. 28–29, 63). Plaintiff claims there is an inconsistency, which the ALJ should have resolved, because the DOT rates a security guard's level of interaction with people as a six and significant. (Docket No. 8 at 12–13).

The Court is unpersuaded by Plaintiff's argument that the DOT rating alone renders the occupation of security guard incompatible with Plaintiff's RFC. However, the Court must also analyze the DOT description of the occupation to determine the actual level of interaction with people required. *Sigala*, 2019 WL 719512, at *4 ("'people' ratings are not to be considered in a vacuum. In addition to a particular rating, the ALJ, a VE, and a reviewing court must also consider the precise requirements for each individual position.") (quoting *Hart v. Berryhill*, No. CIV 17-636-SLP, 2018 WL 2091367, at *3 (W.D. Okla. Apr. 9, 2018), *report and recommendation adopted*, 2018 WL 2090484 (W.D. Okla. May 4, 2018)). The Court cannot rely solely on the DOT's "people" rating for instruction, as "the arrangement of people functions in the DOT 'is somewhat arbitrary and can be considered a hierarchy only in the most general sense.'" *Id.* (quoting DOT, App. B, 1991 WL 688701). Several aspects of performing the job of security guard involve interacting with people, including warning violators of rule infractions; apprehending or expelling miscreants; observing departing personnel; sounding alarm or calling police or fire department by telephone in case of fire or presence of unauthorized persons; and permitting

---

[5] "Frequent" or "frequently" is defined as an "activity or condition exist[ing] from 1/3 to 2/3 of the time" and "occasional" or "occasionally" as an "activity or condition exist[ing] up to 1/3 of the time." DOT, App. C, 1991 WL 688702 (4th ed. 1991).

authorized persons to enter property.[6]  DOT No. 372.667-034, 1991 WL 673100.  Arguably, these tasks may require frequent talking to generally perform the occupation and Plaintiff's RFC limits her to only occasional contact with the public.  *Sigala*, 2019 WL 719512, at *5 ("Thus, an RFC that limits a claimant to occasional interaction with people is inconsistent with a job that requires frequent talking.") (citing *Akbichi v. Berryhill*, No. 17-cv-00838-REB, 2018 WL 1737206, at *3 (D. Colo. Apr. 11, 2018)).  Thus, considering the DOT's "people" rating and description of security guard, the Court concludes there is an apparent inconsistency between the DOT and Plaintiff's RFC limiting her to occasional interaction with the public.

Defendant correctly claims that "the ALJ inquired as to whether or not the testimony was consistent with the DOT, and the [VE] testified that it was consistent[.]"  (Docket No. 13 at 13).  However, a general inquiry as to whether the entirety of the VE's testimony was consistent with the DOT does not satisfy the ALJ's duty to resolve apparent conflicts.  *See Sigala*, 2019 WL 719512, at *3.  Further, in support of Defendant's assertion that there is no conflict, it cites to *Hackett*, 395 F.3d 1168 and *Duncan v. Colvin*, 608 F. App'x 566 (10th Cir. 2015) in support of the notion that a "people" rating of six is "consistent with even more restrictive social limitations[,]" such as occasional interaction with the public. (Docket No. 13 at 14); *but see Ford v. Berryhill*, No. 1:16 CV 140 JMB, 2017 WL 3968742, at *10 (E.D. Mo. Sept. 8, 2017).  *Hackett* involved an RFC requiring that the claimant "avoid direct contact with the general public and have

---

[6] Defendant asserts that "[t]he majority of the tasks of a security guard do not involve people[.]" (Docket No. 13 at 14).  However, the fact that *most* of the tasks listed in the DOT description do not involve interaction with people is not determinative.  The DOT does not indicate that an employee's time must be allocated equally between the enumerated tasks.  *See Sigala*, 2019 WL 719512, at *5 (finding the Commissioner's argument that a telemarketer position involves limited social interaction because only two out of eight of their duties require direct contact with others to be unpersuasive, as it erroneously assumed that a telemarketer's time was divided equally between the eight listed duties).

15

only occasional interaction with co-workers." 395 F.3d at 1171–72 (quotations omitted). At step five, the ALJ, relying on the VE testimony, concluded the claimant could perform work as a call-out operator (DOT 237.367-014, 1991 WL 672186) and a surveillance-system monitor (DOT 379.367-010, 1991 WL 673244), both of which have "people" ratings of six and significant. *Id.* at 1172. The court found that "[t]he job descriptions for these two positions, however, indicate[d] that contact with people is rather limited." *Id.* at 1175–76. Additionally, the court noted that, during the administrative hearing, the VE advised that the two positions would be "fairly solitary jobs." *Id.* at 1176. Thus, the court determined there was no conflict between the DOT and the claimant's RFC. *Id.* In *Duncan*, the RFC limited the claimant to "superficial contact with coworkers, supervisors, and the public." 608 F. App'x at 577 (quotations omitted). At step five, the ALJ, relying on the VE testimony, concluded the claimant could perform work as a call-out operator (DOT 237.367-014, 1991 WL 672186), a surveillance-system monitor (DOT 379.367-010, 1991 WL 673244), and an election clerk (DOT 205.367.030, 1991 WL 671719), all of which have "people" ratings of six and significant. *Id.* Similarly, the court concluded there was no conflict, as two of the three DOT descriptions indicated that interaction with people was limited and therefore "consistent with the restriction of superficial contact with coworkers, supervisors, and the public." *Id.* (quotations omitted).

The instant case is distinguishable from *Hackett* and *Duncan*. Unlike *Hackett* and *Duncan*, which addressed the same occupations and hence the same DOT descriptions, the DOT description at issue here is quite different. According to the descriptions, the occupations of call-out operator and surveillance-system monitor do appear to involve limited interaction with people and, when social interaction is required, it is limited to telephonic communication. *See* DOT 237.367-014, 1991 WL 672186; DOT 379.367-010, 1991 WL 673244. Conversely, the position of security

guard may require significant, direct interaction with people, as discussed above. DOT 372.667-034, 1991 WL 673100. Further, although the ALJ in *Hackett* did not explicitly acknowledge the possibility of a conflict, the VE testified that the relevant occupations would be "fairly solitary," suggesting the jobs would require minimal public interaction. 395 F.3d at 1176. No such testimony exists here. Moreover, both ALJs in *Hackett* and *Duncan* proceeded through step five of the process for evaluating claims for disability benefits and found that the claimants could perform other jobs existing in significant numbers in the national economy. *See* 395 F.3d 1168; 608 F. App'x 566. Here, the ALJ stopped at step four after concluding Plaintiff could perform her PRW. (R. 28–29). Thus, the Court finds there is an unresolved inconsistency between Plaintiff's RFC and her PRW. As such, the absence of any identification of alternative jobs existing in significant numbers in the national economy by the ALJ requires reversal. *Haddock*, 196 F.3d at 1092.

### The Remaining Allegations of Error

Plaintiff's remaining arguments include that there is an unresolved inconsistency between the RFC and the temperament necessary to perform her PRW and that the ALJ "failed to perform a proper analysis of [Plaintiff's] past work and the physical and mental demands of that work under *Winfrey*." (Docket No. 8 at 13–15). The Court declines to consider these allegations of error, as Plaintiff's first argument regarding the ALJ's failure to resolve an inconsistency between the RFC and Plaintiff's PRW directly impacts the ALJ's step four determination. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**Conclusion**

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 7th day of March, 2024.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT